IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Eugene Davis, ) | |
| ) | |
| Plaintiff, ) | **ORDER DENYING MOTIONS FOR** |
| ) | **SANCTIONS AND DEEMING MOOT** |
| v. ) | **MOTION FOR HEARING** |
| ) | |
| Holly Negaard; Holly Negaard, as Trustee ) | |
| of the Holly Negaard Revocable Living ) | |
| Trust; Jessica Purdy a/k/a Jessica ) | |
| Shanafelt; and Purdy Investments, LLC ) | Case No.: 1:23-cv-00195 |
| d/b/a Western Apartments, ) | |
| ) | |
| Defendants. ) | |

On April 28, 2025, Defendants Holly Negaard, Holly Negaard, as Trustee of the Holly Negaard Revocable Living Trust, and Jessica Purdy a/k/a Jessica Shanafelt (collectively "Defendants") filed a *Motion for Sanctions*. (Doc. No. 75). Defendants also requested a *Motion for Hearing* on the matter. (Doc. No. 78). On May 12, 2025, Plaintiff Eugene Davis ("Plaintiff") filed a *Motion for Sanctions* against the Defendants. (Doc. No. 80). For the reasons articulated below, the court **DENIES** Defendants' *Motion for Sanctions* (Doc. No. 75), renders **MOOT** the *Motion for Hearing* (Doc. No. 78) and **DENIES** Plaintiff's *Motion for Sanctions* (Doc. No. 80).

I. BACKGROUND

The following facts are taken from the parties' motions, pleadings, and supporting documents. The facts are presumed true for the purposes of this order.

Plaintiff was a tenant of the Western Apartments in Williston, North Dakota. (Doc. No. 76 at 2). During Plaintiff's tenancy, the Western Apartments were owned and operated by Defendant Holly Negaard with assistance from Defendant Jessica Purdy. (*Id.*). After falling behind on his rent, Plaintiff applied for housing assistance. (Doc. No. 1 at 3). Plaintiff was later issued a notice

to evict by Defendants. (Doc. No. 76 at 2). Defendants began a summary eviction action in North Dakota state court. (Doc. No. 1 at 6). At the summary eviction hearing Plaintiff argued in part that "he was being discriminated against because the Landlord and/or Management refused to timely cooperate with [him] to allow him to obtain timely rental assistance." (*Id.*). The court found Plaintiff's landlord had a contractual right to evict Plaintiff due to the month-to month lease, ordered Plaintiff's eviction, and that he pay $571 in opposing party's costs and fees. (Doc. No. 1 at 7).

On July 28, 2022, Plaintiff filed a complaint with the North Dakota Department of Labor and Human Rights asserting he was discriminated against. (*Id.* at 8). On June 27, 2023, the North Dakota Department of Labor and Human Rights issued a Determination finding no reasonable cause to substantiate discriminatory housing practices, allowing him to bring suit. (*Id.*).

On September 29, 2023, Plaintiff initiated the above-captioned action with the filing of a Complaint against Defendants Holly Negaard, Holly Negaard, as Trustee of the Holly Negaard Revocable Living Trust, Jessica Purdy a/k/a Jessica Shanafelt, and Purdy Investments, LLC d/b/a Western Apartments. (Doc. No. 1).

In November of 2024, the parties deposed of several witnesses and parties. (Doc. No. 81 at 2). Weeks after the November 2024 depositions, Defendants served Plaintiff with a sanctions motion, to which Plaintiff provided a response, arguing the allegations were baseless. (Doc. No. 76 at 4; Doc. No. 81 at 2).

Defendants filed their *Motion for Sanctions* and *Motion for Hearing* on April 28, 2025, and May 5, 2025, respectively. (Doc. Nos. 75, 78). Plaintiff filed his *Motion for Sanctions* on May 12, 2025. (Do. No. 80). This matter is now ripe for the court's review.

2

## II.     LEGAL STANDARD

Under Rule 11 of the Federal Rules of Civil Procedure, when presenting a pleading, written motion or other paper to the court, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that:

(1) it is not being presented for any improper purpose, such as to harass, caused unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). The court may impose appropriate sanction when Rule 11(b) has been violated. Fed. R. Civ. P. 11(c)(1). The Eighth Circuit has previously stated, "[T]he standard under Rule 11 is whether the attorney's conduct, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017) (quoting *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1009)). The main purpose of Rule 11 "is to deter baseless filings.... Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Adams*, 863 F.3d at 1077 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)).

## III.    DISCUSSION

Defendants seek sanctions against Plaintiff and his counsel for an alleged violation of Rule 11(b)(3). Defendants allege numerous violations of Rule 11 in Plaintiff's Complaint. However, Defendants focus on two of the allegations they deem "most unnecessarily burdensome" in the

litigation within their memorandum. Specifically, that Plaintiff and his counsel have made allegations lacking evidentiary support: "(1) the allegation that Defendants discriminated against him, on the basis of his race, by refusing to provide information to a third party so that Plaintiff could obtain rental assistance from that third party; and (2) the allegation that Defendants evicted Plaintiff for 'running a business out of his garage.'"(Doc. No. 76 at 1). In response, Plaintiff argues he is entitled to sanctions as the Defendants' motion is "totally unsupported by facts or law" but also because "their prior answering allegations and their Motion itself" are sanctionable. (Doc. No. 81 at 1). Plaintiff further asserts that the court should deny Defendants' motion and grant his motion "for pleadings made in bad faith and without evidentiary support and for bringing a totally frivolous motion that appears to have ben brought for no reason other than to drive up litigation costs and to unduly prejudice the Plaintiff who was actually discriminated against by the Negaard Defendants." (*Id.* at 2).

### A. Discrimination in Obtaining Rental Assistance

Defendants first argue that "plaintiff and his counsel have known, at least since the conclusion of the NDDOLHR[1] process and dismissal of that complaint, that there was no merit to Plaintiff's claim that he was subjected to discrimination on the basis of race by Defendants' actions in responding to requests for information for purposes of his rental assistance application." (Doc. No. 76 at 12). Defendants contend that the NDDOLHR investigation revealed there were no unreasonable delays or evidence Defendants acted with discriminatory intent when responding to requests for information, and that a majority of the delays in receipt of rental assistance was due to the workload and delays in the CAP/NDRH[2] process. (*Id.*).

---

[1] NDDOLHR stands for the North Dakota Department of Labor and Human Rights.
[2] CAP refers to Community Action Partnership. NDRH stands for North Dakota Rent Help.

Plaintiff's Complaint alleges that he requested Defendants provide the rent ledger and other tenant information so he may take part in a rental assistance program. Specifically,

> 15. Jessica refused or failed to provide the ledger in a timely manner, resulting in Davis being late on his rent, resulting in his Landlord threatening to evict him, and also resulting in a delay of qualifying for the rental assistance program.
>
> 16. When Davis asked Jessica what was holding up the process, Jessica responded that she had heard from somebody else that Davis was planning to move out so she had not provided the requested information. Davis was in fact not moving out and had no plans to do so, and he informed Jessica she was wrong and that she needed to provide the information to the Rent Bridge program.
>
> 17. On information and belief, Holly and/or Jessica were prompt with requests by their white residents to provide rental assistance information.

(Doc. No. 1 at 3).

Notes from the Community Action Partnership further reflect that on July 20, 2021, Defendant Purdy was informed by CAP that North Dakota Rent Help required a rent ledger. (Doc. No. 55-22 at 6). Defendant Purdy informed CAP she would provide it to them by end of day on July 21, 2021. (*Id.*). However, CAP did not receive the ledger and upon calling Defendant Purdy on July 27, 2021, was informed by Defendant Purdy that Plaintiff was moving out. (*Id.*). This is contradicted by information provided by Plaintiff to CAP, who informed them the same day that he was not moving out. (*Id.*).

In his deposition Plaintiff further acknowledged the alleged delay[3] was based on Defendants informing CAP that Plaintiff was moving out and that "[t]hey were never going to send that stuff until I found out that they had told her that I had moved out. They were trying not to send it." (Doc. No. 55-1 at 34). Moreover, while Defendants argue the NDDOLHR investigation did not reveal discriminatory intent, with the Determination of No Reasonable Cause noting "the Department has determined that reasonable cause does not exist to believe that a discriminatory

---

[3] The court is not inclined to address what is or is not considered a "delay" for purposes of this order.

5

house practice has occurred" (Doc. No. 55-31 at 2), the Determination also established there was a prima facie case of discrimination. (*Id.* at 7).

This court must apply an "objective reasonableness" standard in determining whether a Rule 11 violation has occurred. *Robinson v. Eng*, 148 F.R.D. 635, 646 (D. Neb. 1993). Sanctions are mandatory when a Rule 11 violation occurs, but a violation is a matter of determination by the court. *Id.*; *see O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir. 1987). "The issue is whether the person who signed the pleading conducted a reasonable inquiry into the facts and law supporting the pleading." *O'Connell*, 812 F.2d at 395.

The court is not inclined to find there has been a violation of Rule 11 as to the alleged discrimination in seeking rental assistance. The standard is "objective reasonableness" and evidence in the record establishes at minimum a prima facie case of discrimination in the Determination of No Reasonable Cause and there is conflicting information as to Plaintiff's attempts to receive rental assistance and Defendants' timely involvement in the process.

**B. Eviction for Running a Business out of Plaintiff's Garage**

Defendants also argue Plaintiff has continued to allege he was evicted for "running a business out of his garage" and that this was a predicate for his discrimination claim. Defendants contend this argument it problematic as Defendants have never said Plaintiff was evicted for "running a business out of his garage," rather he was evicted for continued violations of parking rules.[4]

A review of Defendant Holly Negaard's ("Defendant Negaard") testimony at the 2022 eviction hearing shows the following in response to Plaintiff's questioning.

Q.   Why all of a sudden the eviction after I've been there six years?

---

[4] It is noted in the Deposition of Jessica Purdy that reasons for Plaintiff's eviction included noncompliance with parking rules, verbal abuse, and harassment. (Doc. No. 55-7 at 22).

> A. It had nothing to do with the fire. It had to do with you having vehicles parked everywhere, as many as seven at a time, in other people's parking spots, all over the whole area. We don't have that kind of parking. **You ran a business of used cars out of the garage.** And I – we have got after you, and got after you for it.

(Doc. No. 1-5 at 13) (emphasis added). Defendants have attempted to mitigate this statement in their summary judgment briefing. Notably,

> Plaintiff's Memo also repeats the false and bad faith argument that he was evicted 'for allegedly running a car business out of his garage,' and arguing that this is part of his housing discrimination claim because other tenants were allowed to conduct business-related activities and store business materials in their garages while he was allegedly prohibited from doing so. Defendants have consistently stated that Plaintiff was evicted for continued parking violations, and not for 'running a business' in his garage. Plaintiff apparently came up with this idea that he was evicted for 'running a business' from Defendant Negaard's testimony at the eviction hearing, in which she attempted to explain to the judge, over Plaintiff's *pro se* cross-examination and interruptions, *how and why* Plaintiff had been egregiously violating the parking rules – because he ran a business of used cars out of his garage, and as further proof of the parking violations. Defendant Negaard was simply providing the judge with context to understand that Plaintiff was bringing many cars to the property as she had observed, as Plaintiff was denying this. While no white tenants were evicted for running a business out of their garages, no non-white tenants have been evicted for this reason, either.

(Doc. No. 65 at 4-5) (internal citations omitted). It is not apparent to the court that this argument is a red herring argument rendered "false, without factual support, and violative of Rule 11." In response to being asked why Plaintiff was evicted, Defendant Negaard stated under oath in part that "[Plaintiff] ran a business of used cars out of the garage." Defendants can debate that this statement is an explanation as to why Plaintiff violated parking rules, but it does not mean Plaintiff's argument is a frivolous one.

Applying the "objective reasonableness" standard, the court finds it is reasonable that Plaintiff interpreted Defendant Negaard's statement to mean that running a business out of the garage was a factor in his eviction along with the alleged parking violations. The record further evidences other tenants at a minimum using their garages as a storage unit for tools for their various

7

businesses (i.e. an alleged taxi service, painting business, knife forging).[5] (*See* Doc. No. 81 at 7). This is enough for the court to conclude that sanctions are not warranted as to this allegation. However, Plaintiff's argument of selective enforcement of rules and regulations and alleged selective treatment of tenants is one left to the factfinder.

### C. Sanctions

Under Rule 11, sanctions may be awarded if the court determines Rule 11(b) has been violated. For the reasons previously articulated, the claims alleged by Plaintiff are neither frivolous nor lacking evidentiary support and are best left to be scrutinized by a neutral factfinder. It is also not apparent that Defendants' motion was brought to "harass and annoy Plaintiff and to needlessly drive up litigation costs" given the nature of the claims and evidence. (Doc. No. 81 at 9). As to Plaintiff's argument that certain answering allegations were made in bad faith, the court will not dictate whether Defendants were justified in admitting or denying allegations in their answer, especially not at this late stage of litigation.

The court now turns to Defendants' contention that Plaintiff's motion was procedurally deficient and invalid. Even if the court were to find Plaintiff's motion violated the special procedures outlined in Rule 11, the court's decision to deny the parties' respective requests for sanctions would not change.

As a final note, based on a review of the filings it seems counsel for Defendants' and Plaintiff have had some difficulty working cordially with one another, which the court finds troubling. Civility and zealous advocacy are not mutually exclusive. The court urges counsel to continue to work in their clients' best interest.

---

[5] The court will not determine whether the tenants were conducting businesses out of their garages but will acknowledge evidence of business tools and/or practices.

IV. **CONCLUSION**

The court **DENIES** both Plaintiff and Defendants' *Motions for Sanctions* (Doc. Nos. 75, 80). Defendants' *Motion for Hearing* is deemed **MOOT** (Doc. No. 78).

**IT IS SO ORDERED.**

Dated this 7th day of August, 2025.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court
